UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOHN OMOILE, | § |
| | § |
| *Plaintiff,* | § |
| | § |
| v. | § Civil Action No. 3:22-CV-2638-X |
| | § |
| GODWIN EMEFIELE, | § |
| | § |
| *Defendant.* | § |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Godwin Emefiele's motion to dismiss Plaintiff John Omoile's complaint. [Doc. 8]. After careful consideration, and for the reasons below, the Court **GRANTS** the motion and **DISMISSES WITHOUT PREJUDICE** the complaint.

### I. Background

Omoile and Emefiele are brothers-in-law and were, until the events giving rise to this lawsuit, business partners.[1] Omoile helped Emefiele purchase a home in Coppell in the same neighborhood where Omoile resides. The two engaged in various business dealings in both Texas and Nigeria, including stock purchases, real estate, and an oil and gas venture based, at least partially, in Houston.

---

[1] At the motion to dismiss stage, the Court accepts all of Omoile's well-pleaded facts as true. *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). The Court considers facts from the parties' pleadings, their motions, and appendices attached to those motions. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

1

Eventually, Emefiele "sought to sever all business relationships with" Omoile.[2] The two signed an agreement in 2014 attempting to resolve their financial and business disagreements. According to Omoile, "Emefiele had no intention of performing his obligations as stated in the 2014 document," and after a few years of unsuccessfully trying to resolve their differences, Omoile sued Emefiele.

Initially, Omoile sought to sue in Nigeria, but was deterred upon learning that the proceedings would likely be corrupt due to Emefiele's position as Governor of the Central Bank of Nigeria. So instead, he sued in Texas. But a month after filing suit, Omoile's lawyer unilaterally dismissed the lawsuit because his family in Nigeria had been threatened due to his representation of Omoile. Undeterred, Omoile again sued Emefiele, this time in Texas state court, alleging (1) breach of contract, (2) breach of fiduciary duty, and (3) fraud.[3] Emefiele removed the case to federal court on the basis of diversity jurisdiction.

Emefiele now moves to dismiss Omoile's complaint, arguing that (1) the Court lacks personal jurisdiction over Emefiele and (2) service was improper.

## II. Legal Standard

"In a diversity action, a federal court may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law."[4] In Texas, the state long-arm statute has "the same scope as the [United States] Constitution."[5] To

---

[2] Doc. 1-3 at 13.

[3] *Id.* at 17–20.

[4] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 235 F.3d 865, 867 (5th Cir. 2001) (per curiam).

[5] *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

2

determine personal jurisdiction under the Constitution, courts look to "whether exercising jurisdiction over [a party] is consistent with the Due Process Clause of the Fourteenth Amendment."[6]

Federal due process "permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice."[7]  As to the first consideration, establishing minimum contacts requires demonstrating contacts sufficient to assert either general or specific personal jurisdiction.[8]

"When, as here, the [Court] conduct[s] no evidentiary hearing, the party seeking to assert jurisdiction must present sufficient facts as to make out only a prima facie case supporting jurisdiction."[9]  The Court "must accept as true that party's uncontroverted allegations, and resolve in its favor all conflicts between the facts contained in the parties' affidavits and other documentation."[10]

While "the paradigm forum for the exercise of general jurisdiction is the individual's domicile,"[11] general personal jurisdiction "will attach, even if the nonresident defendant's contacts with the forum state are not directly related to the

---

[6] *Id.*

[7] *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (cleaned up).

[8] *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

[9] *Alpine View*, 205 F.3d at 215.

[10] *Id.*

[11] *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up).

cause of action, if the defendant's contacts with the forum state are both continuous and systematic."[12] Courts look to "a variety of factors" when determining an individual's domicile, and "[n]o single factor is determinative."[13] "[E]vidence shedding light on the litigant's intention to establish domicile" is relevant.[14] Other factors indicating domicile "may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family."[15] But in short, "domicile is established by physical presence in a location coupled with an intent to remain there indefinitely."[16] "One acquires a domicile of origin at birth, and that domicile continues until a new one (a domicile of choice) is acquired."[17]

Specific personal jurisdiction exists when the causes of action "arise out of or relate to the defendant's contacts with the forum."[18]

---

[12] *Wilson*, 20 F.3d at 647 (cleaned up).

[13] *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996).

[14] *Id.*

[15] *Id.* This mirrors the standard for corporate defendants, which are deemed to reside wherever they are "at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." (cleaned up)).

[16] *In re Ran*, 607 F.3d 1017, 1022 (5th Cir. 2010).

[17] *Id.* (cleaned up).

[18] *Bauman*, 571 U.S. at 118 (cleaned up).

### III. Analysis

Even taking all of Omoile's uncontroverted allegations as true and resolving all conflicts between Omoile's affidavit and Emefiele's affidavits in favor of Omoile's version of the facts, Emefiele lacks sufficient contacts with Texas to justify exercising jurisdiction over him in this case.

As to general personal jurisdiction, Emefiele says he lives in Nigeria. Omoile seems to agree: His complaint states that "Emefiele is a resident of Lagos, Nigera," and he mailed demand letters to Emefiele's Nigerian address prior to filing suit.[19] Omoile's briefing summarizes Emefiele's contacts with Texas as follows:

- Godwin Emefiele owns real property in Texas;
- Godwin Emefiele did business in the State of Texas;
- Godwin Emefiele paid his utility bills in Texas;
- Godwin Emefiele paid property taxes and insurance for his property in Texas;
- Godwin Emefiele frequently sent money to Texas to pay his bills;
- Godwin Emefiele held a Texas Identification Card;
- Godwin Emefiele sought and received investments from Texas citizens; and
- Godwin Emefiele frequently visits Texas.[20]

This isn't enough. As to homes, Omoile says that Emefiele sought his help to purchase and maintain at least one home in Coppell, Texas, which Emefiele frequently visits and where his family members reside, and which he has claimed in correspondence with Omoile belongs solely to him.[21] Omoile further alleges, and attaches evidence to show, that Emefiele purchased another home in Coppell, which

---

[19] Doc. 1-3 at 10, 34.

[20] Doc. 12 at 5 (cleaned up).

[21] Doc. 13 at 4, 10, 17, 34.

is titled to Emefiele's wife.[22] And Omoile adds that Emefiele paid taxes, bills, and insurance on at least some real property in Texas.[23]

Owning real property is one factor indicating domicile, but Omoile does not—and, it appears, cannot—show that Emefiele lives, intends to remain, or otherwise resides in any permanent sense at any of these properties. Omoile offers a document in which Emefiele says he "desired to buy and own [] property in Dallas for me and my family to use when we vacation in the [United States]."[24] And Omoile's own declaration says that "Emefiele makes frequent visits to Texas as he currently owns two homes in Coppell, Texas for his family to stay and for him to visit and stay at during visits to the United States."[25] Visits and vacation properties are insufficient to establish domicile.

Omoile also points to a business relationship between himself and Emefiele involving real estate, commerce, and oil and gas ventures in Houston.[26] Though nothing came of this business relationship due to the parties' strained friendship, their settlement agreement, which sought to terminate their ventures amicably, acknowledges that the parties at least engaged in real estate investments, a foray into the trucking industry, and unspecified oil and gas operations.[27] But business dealings involving Texas hardly demonstrate an intent to remain in Texas

---

[22] *Id.* at 7, 52.

[23] *E.g.*, *id.* at 11.

[24] *Id.*

[25] *Id.* at 4.

[26] *Id.* at 6, 10–11, 34–35.

[27] *Id.* at 34–35.

indefinitely. The Court finds that Omoile's evidence, taken as true, fails to show that Texas is Emefiele's domicile (either by birth or by choice) or that Emefiele's contacts with Texas are continuous and systematic enough to justify exercising general personal jurisdiction over him.

Specific personal jurisdiction exists when the causes of action "arise out of or relate to the defendant's contacts with the forum."[28] Omoile brings three causes of action, which the Court will address in turn: (1) breach of contract, (2) breach of fiduciary duty, and (3) fraud.[29]

First, Omoile's breach-of-contract claim does not arise out of Emefiele's contacts with Texas. The Fifth Circuit has offered guidelines for determining whether a breach-of-contract claim gives rise to specific personal jurisdiction, noting that "only those acts which relate to the formation of the contract and the subsequent breach are relevant, including prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."[30] Relevant factors include "the location of the communications;" "the place of performance;" "the amount of control over performance in the forum state; and" "whether the defendant contracted with the plaintiff because of the plaintiff's location

---

[28] *Bauman*, 571 U.S. at 118 (cleaned up).

[29] Doc. 1-3 at 17–19. As to the third claim, Omoile alleges "Fraud in the Inducement and Common Law Fraud, Concealment of Material Facts, Constructive Fraud." *Id.* at 19.

[30] *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 500 (5th Cir. 2022).

within the forum state."[31]  Ultimately, the analysis turns on whether the "contract []
had a *substantial* connection with" the forum state.[32]

The contract in question is a 2014 "settlement agreement" the parties signed in Lagos, Nigeria.[33]  The agreement covered a variety of disputes between the parties, but Omoile only alleges that Emefiele later breached three of the contract's provisions.  Two of the provisions pertain to Emefiele's agreement to help Omoile purchase stock and obtain accounting information through Zenith Securities Limited, a Nigerian brokerage company in Lagos, Nigeria.[34]  There is no indication these provisions relate to Texas.  The third provision Omoile says Emefiele breached is an agreement to "pay off all outstanding mortgage balance, taxes to date[,] and any other fee remaining to be paid" on properties the parties jointly purchased in Houston.[35]  This one-time payoff is far removed from contracts imposing "a long-term relationship with . . . continuing obligations and wide-reaching contacts" that the Supreme Court and the Fifth Circuit have found substantial enough to establish personal jurisdiction via contract.[36]  The payoff clause "falls short of a connection giving rise to a reasonable anticipation . . . of being haled into court in the forum state."[37]  By this single clause

---

[31] *Ecigrusa LLC v. Silver State Trading LLC*, No. 3:21-cv-1846-B, 2022 WL 1321573, at *4 (N.D. Tex. May 3, 2022) (Boyle, J.).

[32] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (cleaned up).

[33] Doc. 1-3 at 14.

[34] Doc. 15 at 11–12.

[35] *Id.* at 11.

[36] *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985); *see Burger King*, 471 U.S. at 475–76.

[37] *Stuart*, 772 F.2d at 1194.

mandating a one-time payoff, Emefiele did not "manifestly [] avail[] himself of the privilege of conducting business" in Texas, so this piece of the parties' agreement does not warrant exercising personal jurisdiction over Emefiele.[38]

Second, Omoile's breach-of-fiduciary-duty claim does not arise out of Emefiele's contacts with Texas.  Omoile's complaint alleges that Emefiele "owed [Omoile] a fiduciary duty as a result of their joint ventures, the stock transactions, and their close relationship."[39]

As to the parties' joint ventures, which the Court assumes includes their oil and gas dealings that involved Texas, the 2014 settlement agreement terminated all such business, and Omoile doesn't allege that Emefiele breached that part of the contract.  Omoile agreed to "hold [Emefiele] totally harmless" and stated that "there are no remaining issues to be resolved between" the parties.[40]  Accordingly, the Court finds that the parties' joint business ventures in Texas cannot form the basis of Omoile's breach-of-fiduciary-duty claim because Omoile alleges no breach related to those business ventures and does not explain why Emefiele owed him a fiduciary duty in the first place. As to the stock transactions, as noted above, they were meant to occur in Lagos, Nigeria through a Nigerian company, and Omoile does not explain how that part of the agreement or Emefiele's alleged violation of it implicate Texas or Texas law. And finally, Omoile fails to explain why the parties' "close relationship" gave rise to a fiduciary duty, how Emefiele breached it, and whether that alleged

---

[38] *Burger King*, 471 U.S. at 476.

[39] Doc. 1-3 at 18.

[40] Doc. 15 at 12.

breach arose due to contacts with Texas. Thus, the Court finds that Omoile's breach-of-fiduciary-duty claim cannot support the exercise of personal jurisdiction over Emefiele.

Third and finally, Omoile's fraud claims do not arise out of Emefiele's contacts with Texas.

The Court first notes that one sentence of Omoile's complaint mentions that Emefiele "made representations/promises in the form of the statements made prior to and in the 2014 document with respect to going into an Oil and Gas business with [Omoile]."[41] This is the only sentence linking Omoile's fraud allegation to the parties' Texas business dealings. The Court "is duty-bound to examine its subject-matter jurisdiction *sua sponte*."[42] Fraud claims trigger a heightened pleading standard that "requires allegations of the particulars of time, place, and contents of the false representations."[43] The Court finds that Omoile's one-sentence description of his fraud claim regarding the parties' Texas business dealings is woefully insufficient to support the Court's subject-matter jurisdiction, and accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Omoile's fraud claim as it pertains to the Texas oil and gas business venture.

The remainder of Omoile's fraud claims relate to the stock transactions that were meant to occur in Lagos, Nigeria and Emefiele's alleged representations concerning those transactions. Omoile does not allege that the stock transactions

---

[41] Doc. 1-3 at 19.

[42] *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 n.4 (5th Cir. 2017).

[43] *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (cleaned up).

involve Texas. Accordingly, Omoile's fraud claims cannot support the Court's exercise of personal jurisdiction over Emefiele.

Having concluded that the Court lacks both general and specific personal jurisdiction over Emefiele, the Court need not analyze whether exercising jurisdiction over Emefiele would comport with fair play and substantial justice, or whether Emefiele was improperly served under Rule 12(b)(5).

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the motion to dismiss and **DISMISSES WITHOUT PREJUDICE** Omoile's complaint. If Omoile believes he can cure the defects in this complaint, he must file an amended complaint within twenty eight days of the date of this order addressing the defects the Court identified in this order.

**IT IS SO ORDERED** this 22nd day of July, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE